UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

SPRINT COMMUNICATIONS COMPANY L.P.,
SPRINT NEXTEL CORPORATION, BOOST
WORLDWIDE, INC. and VIRGIN MOBILE USA,
L.P.,

**MEMORANDUM & ORDER**
12-CV-5048 (MKB)

Plaintiffs,

v.

JASCO TRADING, INC., YRB TRADING CORP.,
ALAN SAVDIE and YEHUDAH BODEK,

Defendants.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

On October 9, 2012, Plaintiffs Sprint Communications Company L.P., Sprint Nextel

Corporation, Boost Worldwide, Inc. and Virgin Mobile USA, L.P. (collectively "Sprint" or

"Plaintiffs") brought the above-captioned action against Defendants Jasco Trading, Inc. and Alan

Savdie ("the Jasco Defendants"), and YRB Trading Corp. and Yehudah Bodek ("the YRB

Defendants") (collectively "Defendants") alleging breach of contract, unfair competition,

tortious interference with business relationships, civil conspiracy, unjust enrichment, conspiracy

to induce breach of contract, fraud, trafficking in computer passwords, unauthorized access,

unauthorized access with intent to defraud, federal trademark infringement, false advertising,

contributory trademark infringement, deceptive acts and practices, and conversion claims.

Plaintiffs now move to enforce a settlement agreement ("Settlement Agreement") that Plaintiffs

assert was reached between Sprint and the YRB Defendants since the commencement of this

action. (Docket Entry No. 44.) The YRB Defendants moved to stay the case pending

arbitration. (Docket Entry No. 48.) For the reasons set forth below, the Court denies Plaintiffs'

motion to enforce the Settlement Agreement, and denies the YRB Defendants' motion to stay the case pending arbitration, without prejudice to renew.

## I.  Background

Plaintiffs are mobile telephone communications companies.  Plaintiffs bring this action against Defendants, two corporations and their respective presidents.  (Compl. ¶¶ 16–19.) Plaintiffs allege that Defendants engaged in a "Bulk Handset Trafficking Scheme" in which they made unauthorized and deceptive bulk purchases of Sprint mobile telephones, which they resold outside the United States without authorization.

Sprint alleges in part that, by purchasing Sprint telephones, the YRB Defendants agreed to the terms and conditions ("Terms and Conditions") that were included with each Sprint telephone, and that the Terms and Conditions comprise a valid and binding contract between Sprint and the YRB Defendants, which contract was breached by the YRB Defendants.  (Compl. ¶¶ 60–65; Compl. Ex. B "Terms and Conditions.")  The YRB Defendants, represented by counsel Arnold Davis, and Plaintiffs, represented in part by Stacey Sutton and Natalie Napierela, began to negotiate the Settlement Agreement through their respective attorneys after the YRB Defendants filed their answer to the complaint.  (Pl. Mem 3; Def. Opp'n 3.)

On December 18, 2012, the day before the parties were scheduled to appear before Magistrate Judge Ramon E. Reyes for an initial conference, Sutton sent Davis a copy of the Settlement Agreement, which incorporated revisions suggested by Davis.  (Pl. Ex. A, Declaration of Stacey Sutton dated May 3, 2013 ("Sutton May 2013 Decl.") ¶ 8; Def. Opp'n Mem. 4.)  The attorney for the YRB Defendants, Davis, met with his client, individual Defendant Bodek, who declined to sign the Settlement Agreement at that time.  (Def. Mem. 4.)  Davis subsequently sent an email to Sutton, counsel for Plaintiffs, which stated:

> I have spent the better part of today convincing my client to sign
> the settlement agreement. He wants to consult with another
> attorney within his Hasidic sect and has asked for a bit more time
> to come to a conclusion. It is my feeling that he will sign. The
> matter is on before the Magistrate at 11 AM tomorrow. Is it OK to
> report that settlement papers have been distributed and a short
> adjournment is needed to complete the matter?

(Def. Opp'n Ex A ("Email from Arnold Davis dated Dec. 18, 2012 4:14 pm").) Sutton replied

with an email that stated, in pertinent part, "I don't have an issue with you conveying to the

Court that the parties believe settlement is imminent. . . . If you want to send the Court a letter

that you believe that YRB and Sprint are close to settlement and as such you do not want to

attend, we won't oppose." (*Id.* ("Email from Stacey Sutton dated Dec. 18, 2012 at 4:17 pm").)

After Davis responded by email indicating that he thought it best to appear and report to the

Court in person, Sutton replied: "Since you will be attending the conference and we were not

able to get this totally settled before the conference, please find attached the propose[d] case

management plan that we drafted." (*Id.* ("Email from Stacey Sutton dated Dec. 18, 2012 at 4:57

pm").) According to Plaintiffs, at an unspecified time on that same day, Davis called Sutton's

office to explain that his client "needed to get approval to sign the agreement from his

community leaders," but that this was "normal and a formality and that he expected to have the

signed agreement within a short period of time." (Sutton May 2013 Decl. ¶ 8.)

On December 19, 2012, at a conference before Judge Reyes, Davis reported that the

matter as to the YRB Defendants was "pending the signing of the settlement agreement," and

requested that the conference be adjourned until "after the first week of January, and it should be

signed before then." (Pl. Ex. B, Transcript of Conference ("Tr"), 3:10–11.) Plaintiffs' counsel,

Napierela, stated: "We expect that that agreement will be signed either by week's end or early

next week. And the terms have all been negotiated and we're just waiting for the execution of the

document." (Tr. 5:25–6:3.) Later at that same conference Davis informed the court about "one of the sticking points" with his clients regarding the Settlement Agreement. (Tr. 16:17–17:7.) When the court inquired if counsel wanted to discuss the issue at that time, counsel for Plaintiffs responded that it was her understanding that they were going to execute the Settlement Agreement with Davis's clients that week, and suggested that they discuss the matter with Davis over the telephone. (Tr. 17:8–18.)

Following the December 19, 2012 conference, Plaintiffs' counsel did not speak directly to Davis until sometime in January 2013, when Davis informed Plaintiffs that his clients were refusing to sign the Settlement Agreement and he was no longer representing the YRB Defendants. (Pl. Mem. 4; Sutton May 2013 Decl. ¶ 11.) The YRB Defendants subsequently filed a motion to substitute counsel, terminating Davis' representation, (Docket Entry No. 30), and Plaintiffs filed a motion to enforce the Settlement Agreement, (Docket Entry No. 44). The YRB Defendants moved to stay the case pending arbitration pursuant to 9 U.S.C. § 3, citing the mandatory arbitration clause in the Terms and Conditions. (Docket Entry No. 48.)

## II. Plaintiffs' Motion to Enforce the Settlement Agreement

### a. Standard of Review

Settlement agreements are governed by the principles of contract law. *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007) ("A settlement agreement is a contract that is interpreted according to general principles of contract law." (citing *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005))). In the absence of a written document, the Second Circuit has identified several factors to be considered in determining whether a settlement agreement is binding. *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). These factors include: "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract;

4

(3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." *Winston*, 777 F.2d at 80 (citing, *inter alia*, Restatement (Second) of Contracts); *see also Powell*, 497 F.3d at 129 (stating *Winston* factors); *Kaczmarcysk v. Dutton*, 414 F. App'x 354, 355 (2d Cir. 2011) (same); *Sawabeh Info. Servs. Co. v. Brody*, 832 F. Supp. 2d 280, 301 (S.D.N.Y. 2011) (same). While "[n]o single factor is decisive," *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 323 (2d Cir. 1997), if "there is a writing between the parties showing that [a party] did not intend to be bound," then "a court need look no further than the first factor." *RKG Holdings, Inc. v. Simon*, 182 F.3d 901 (2d Cir. 1999) (alteration and internal quotation marks omitted) (citing *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 72 (2d Cir. 1989) and *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 75 (2d Cir. 1984)). "A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it." *BCM Dev., LLC v. Oprandy*, 490 F. App'x 409 (2d Cir. 2013) (quoting *Meetings & Expositions Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974)).

### b. Choice of Law

Although not raised by the parties, the Court considers the appropriate law to be applied. Whether New York state law or federal common law applies when evaluating the enforceability of oral settlement agreements has not been decided by the Second Circuit, although the Second Circuit and most district courts have found no meaningful difference between the two. *See, e.g.*, *Ciaramella*, 131 F.3d at 322 (finding "no material difference between the applicable state law or federal common law standard" to determine whether parties reached a settlement of claims, and declining to decide the question); *Figueroa v. New York City Dep't of Sanitation*, 475 F. App'x 365, 366 (2d Cir. 2012) ("[W]e note that the question of whether federal or state law controls the

enforceability of a settlement agreement in this context is an open one."); *Powell*, 497 F.3d at

129 n.1 ("It is unclear whether the settlement of federal claims is governed by New York law or

federal common law.").  The Second Circuit has stated that it need not answer the question, as

"New York law and federal common law [are] materially indistinguishable."  *Powell*, 497 F.3d

at 129 n.1; *Ciaramella*, 131 F.3d at 322 ("Because we find that there is no material difference

between the applicable state law or federal common law standard, we need not decide this

question here").  As a result, "Courts apply New York and federal common law

interchangeably."  *Clarke v. Shinseki*, No. 06-CV-4358, 2009 WL 862237, at *4 n.4 (E.D.N.Y.

Mar. 31, 2009) (citing *Powell*, 497 F.3d at 129); *see also Massie v. Metro. Museum of Art*, 651 F.

Supp. 2d 88, 93 (S.D.N.Y. 2009) ("[F]ederal courts in the Second Circuit regularly apply New

York law, observing that there is no meaningful substantive difference between federal and New

York law with regard to enforceability.").

Although the parties did not raise the issue of which law the Court should apply, they rely

primarily on federal common law in presenting their arguments.  (*See* Pl. Mem. 6 (citing, *inter*

*alia*, *Winston*, 777 F.2d at 80–83); Def. Opp'n 9 (same).)  Accordingly, the Court applies

common law as interpreted by federal courts.  The Court notes that application of New York law

would lead to the same outcome in this case.[1]  *See Ciaramella*, 131 F.3d at 320 ("New York

---

[1]  Under New York law, "a stipulation is generally binding on parties that have legal
capacity to negotiate, do in fact freely negotiate their agreement and either reduce their
stipulation to a properly subscribed writing or enter the stipulation orally on the record in open
court."  *McCoy v. Feinman*, 99 N.Y.2d 295, 302 (2002) (citing N.Y. C.P.L.R. § 2104 and Siegel,
N.Y. Prac § 204, at 323); *see also Velazquez v. St. Barnabas Hosp.*, 13 N.Y.3d 894, 895, 922
N.E.2d 872 (2009) ("No agreement was made in open court or filed with the county clerk.
Accordingly, it is not binding upon the parties." (citing, *inter alia*, N.Y.C.P.L.R. § 2104)).
Section 2104 of New York's Civil Practice Law and Rules, which governs stipulations between
parties, provides that "An agreement between parties or their attorneys relating to any matter in
an action, other than one made between counsel in open court, is not binding upon a party unless
it is in a writing subscribed by him or his attorney or reduced to the form of an order and

relies on settled common law contract principles to determine when parties to a litigation intended to form a binding agreement." (citing *Winston*, 777 F.2d at 80–81)); *Monaghan v. SZS 33 Assocs., L.P.* , 73 F.3d 1276, 1283 (2d Cir. 1996) ("the federal rule regarding oral stipulations does not differ significantly from the New York rule").

### c.    There is No Binding Settlement Agreement

Plaintiffs argue that the YRB Defendants entered into a binding Settlement Agreement with Plaintiffs, notwithstanding the absence of a signed and executed written document. (Pl. Mem. 5.) According to Plaintiffs, the YRB Defendants entered into a binding agreement when counsel for the YRB Defendants: (1) represented to Judge Reyes on December 19, 2012, that the parties had reached an agreement that was merely awaiting the addition of signatures, (Pl. Mem. 3; Pl. Reply 7); (2) represented to Plaintiffs' counsel on December 18, 2012, that his clients had accepted the Settlement Agreement, (Pl. Mem. 8; Declaration of Stacey Sutton dated Aug. 1, 2013 ("Sutton August 2013 Decl.") annexed to Pl. Suppl. Brief, ¶¶ 4–5); and (3) sent to Plaintiffs' counsel a "counteroffer" to the initial offer of settlement, which counsel for Plaintiffs then "accepted" by sending a final revised settlement to counsel for the YRB Defendants, (Pl. Suppl. Reply 1–2). Plaintiffs argue that the oral agreement can be enforced by the Court under settled case law. (Pl. Mem. 6 (citing *Winston*, 777 F.2d at 80–83).) The YRB Defendants argue that there is no evidence that a binding oral agreement had been reached, and even if there were such an agreement, there is no evidence that the parties intended to bind themselves in the absence of a signed agreement. (Def. Opp'n 1–2.)

In entering into settlement agreements, as with all types of contracts, "parties are free to bind themselves orally, and the fact that they contemplate later memorializing their agreement in

---

entered." *See Bonnette v. Long Island Coll. Hosp.*, 3 N.Y.3d 281, 285 (2004); *Powell v. Omnicom*, 497 F.3d 124, 129 (2d Cir. 2007).

an executed document will not prevent them from being bound by the oral agreement."
*Ciaramella*, 131 F.3d at 322. "However, if the parties intend not to be bound until the agreement
is set forth in writing and signed, they will not be bound until then." *Id.* (citing *Winston,* 777
F.2d at 80 and *V'Soske v. Barwick*, 404 F.2d 495, 499 (2d Cir. 1968)). A "voluntary, clear,
explicit, and unqualified stipulation . . . entered into by the parties in court and on the record is
enforceable even if the agreement is never reduced to writing, signed, or filed." *Powell*, 497 F.3d
at 129 (quoting *Role v. Eureka Lodge No. 434, I.A. of M & A.W. AFL–CIO*, 402 F.3d 314, 318
(2d Cir. 2005)); *see also Duran v. J.C. Refinishing Contracting Corp.*, 421 F. App'x 20, 21 (2d
Cir. 2011) ("A district court has the power to enforce a settlement agreement reached in a case
pending before it where there was a 'voluntary, clear, explicit, and unqualified stipulation of
dismissal entered into by the parties in court and on the record.'" (quoting *Role*, 402 F.3d at
318)).

The Court must decide whether an agreement was reached between the parties and, if so,
whether such an agreement is enforceable under the circumstances.

### i. Oral Representation in Court on December 19, 2012

The Court first considers whether the Settlement Agreement is enforceable based on the
parties' oral representation to Judge Reyes at the conference on December 19, 2012. In the
Second Circuit it is well-settled that "[a] district court has the power to enforce a settlement
agreement reached in a case pending before it where there was a 'voluntary, clear, explicit, and
unqualified stipulation of dismissal entered into by the parties in court and on the record.'"
*Jackson v. Heidelberg L.L.C.*, 296 F. App'x 102 (2d Cir. 2008) (quoting *Role*, 402 F.3d at 318));
*see also Duran*, 421 F. App'x 20, 21 (2d Cir. 2011) (same). The existence of such a settlement
agreement is recognized where there is a recitation of the specific terms of an agreement into the

record, and where both parties expressly assent to the agreement. *See, e.g.*, *Powell*, 497 F.3d at 129 (finding oral stipulation binding where both the parties "recited the terms of [a settlement] agreement on the record," and the plaintiff "expressly assented on the record to those terms and the dismissal of the case"); *Role*, 402 F.3d at 315–16 (Oral stipulation binding where magistrate judge read the terms of the agreement to the plaintiff and plaintiff stated "I do accept all the terms. I understood what your Honor told me and am fully aware of the scope of the agreement."); *Tumac Lumber Co., Inc. v. Chenango Valley Pet Foods, Inc.*, No. 11-CV-0698, 2012 WL 1717240, at *1 (N.D.N.Y. May 15, 2012) ("verbal accord" reached during settlement agreement, under which defendant promised to pay specific amounts on specific dates, was enforceable under *Role*); *Quinones v. Police Dep't of City of New York*, No. 10-CV-6195, 2012 WL 2148171, at *1 (S.D.N.Y. Apr. 12, 2012) (oral agreement reached during settlement conference before magistrate judge enforceable where, "[a]fter confirming the terms of the settlement with counsel for both sides, the Court asked Quinones whether he understood the terms of the settlement and whether he agreed to them," and plaintiff assented), *report and recommendation adopted*, No. 10-CV-6195, 2012 WL 2149572 (S.D.N.Y. June 13, 2012); *Duff v. Comm'r Suffolk Cnty. Police Dep't*, No. 04-CV-1568, 2007 WL 4373444, at *3 (E.D.N.Y. Dec. 10, 2007) (oral stipulation binding where magistrate judge "stated the clear terms of the agreement on the record and ensured that Duff's agreement to the terms was knowing and voluntary").

In contrast to these cases, there was no recitation of the terms of any agreement on the record in open court on December 19, 2012, nor any discussion of the terms, or assent to any

terms by any of the parties or their counsel.[2]  Plaintiffs cite no authority in support of their

arguments that the parties were bound to the agreement through the mere act of counsel

informing the magistrate judge that the parties expected the signing of the Settlement Agreement,

where the terms of the agreement were not discussed or agreed to on the record.  Without a

"voluntary, clear, explicit and unqualified stipulation" from the parties, the Court declines to find

that the parties were bound through counsel's representation in court on December 19, 2012.

### ii.    Electronic Communications Between Counsel on December 18, 2012

Plaintiffs argue that counsel for the YRB Defendants bound his clients to the Settlement

Agreement on December 18, 2012, by informing counsel for Plaintiffs that he expected his

clients to have the signed agreement shortly.  It is unclear from the numerous declarations

submitted by Plaintiffs as to precisely when or how counsel for the YRB Defendants expressed

this oral agreement to the terms of the contract, but it appears to have been made either through

telephone message, (*see* Sutton May 2013 Decl.  ¶ 8 ("Later in the day on December 18, 2012,

my office received several calls from Davis . . . ."), direct telephone communication, (Sutton

May 2013 Decl. ¶ 9 ("He asked if we could represent to the Court that Sprint and YRB had

settled"), or email message (*see* Def. Opp'n Ex. A ("Is it OK to report that settlement papers

have been distributed . . . ?")).

Assuming, without deciding, that counsel for the parties did verbally agree to the terms of

the Settlement Agreement, as Plaintiffs argue, the Court must still apply the *Winston* factors to

determine whether the parties intended to be bound to the agreement in the absence of a fully

executed written document.  *See Winston*, 777 F.2d at 80; *see also Powell*, 497 F.3d at 130

(listing *Winston* factors in "deciding whether the parties intended to be bound in the absence of a

---

[2] Indeed, Judge Reyes indicated that normally at a settlement conference he expects the parties themselves to be at the conference.  (Tr. 20:20–21.)

writing" (citing *Winston*, 777 F.2d at 80 and *Ciaramella*, 131 F.3d at 323)); *N. Fork Country, LLC v. Baker Publications, Inc.*, 436 F. Supp. 2d 441, 445 (E.D.N.Y. 2006) ("The only essential prerequisite for a valid settlement agreement is that the parties assent to the terms and conditions of the settlement, and, where there is an oral settlement agreement, that the parties intend to be bound by it." (citing *Omega Eng'g, Inc. v. Omega, SA*, No. 98-CV-2464, 2004 WL 2191588 (D. Conn. Aug. 12, 2004), *aff'd*, *Omega*, 432 F.3d at 437 and *Conway v. Brooklyn Union Gas Co.*, 236 F. Supp. 2d 241, 248 (E.D.N.Y. 2002))).  In this district, courts have also added a fifth factor of "fundamental fairness,"  *Delyanis v. Dyna-Empire, Inc.*, 465 F. Supp. 2d 170, 175 (E.D.N.Y. 2006) (citing *Walker v. City of New York*, No. 05-CV-0004, 2006 WL 1662702, at *9–10 (E.D.N.Y. June 15, 2006) and *Conway*, 236 F. Supp. 2d at 252), to allow judges who were "intimately involved" in the development of a settlement agreement to determine whether the terms of the agreement were fair and reasonable, *see Conway*, 236 F. Supp. 2d at 252; *United States v. U.S. Currency in the Sum of Six Hundred Sixty Thousand, Two Hundred Dollars ($660,200.00), More or Less*, 423 F. Supp. 2d 14, 31 (E.D.N.Y. 2006) ("In the instant case, I played a hands-on role in the settlement negotiations and was involved in all of the open court discussions . . . ."), *adhered to in pertinent part on reconsideration*, 429 F. Supp. 2d 577 (E.D.N.Y. 2006), *aff'd*, 242 F. App'x 750 (2d Cir. 2007).

All parties agree that the Court should apply the *Winston* factors, but argue for different outcomes.  Plaintiffs argue that an application of the *Winston* factors establishes that the parties intended to be bound to the Settlement Agreement even without signatures.  (Pl. Mem 7–10.) The YRB Defendants argue that the application of the *Winston* factors requires a finding that the parties did not intend to be bound absent a signed written document.  (Def. Opp'n 9.)  Applying the *Winston* factors, the Court agrees with the YRB Defendants and finds that the parties did not

intend to bind themselves until there was a fully executed agreement and therefore finds that there is no enforceable agreement.

### 1.    Reservation of Right Not to Be Bound

The first factor is "whether there has been an express [or implied] reservation of the right not to be bound in the absence of a writing." *Winston*, 777 F.2d at 80. Where there is no express reservation, the language and conduct of the parties can nevertheless "reveal such an intent." *See id*. at 81 ("Although neither party expressly reserved the right not to be bound prior to the execution of a document, language in the correspondence [between the parties, and between the parties and the court] does reveal such an intent."); *Lyman v. New York & Presbyterian Hosp.*, No. 11-CV-3889, 2012 WL 6135354, at *5 (S.D.N.Y. Dec. 11, 2012) ("Although this factor is phrased in terms of 'express' reservations, courts . . . also analyze whether the particular facts and circumstances of the case . . . demonstrate an implied reservation of the right not to be bound until the execution of a written agreement." (quoting *Lindner v. Am. Exp. Corp.*, No. 06-CV-3834, 2007 WL 1623119, at *6 (S.D.N.Y. June 5, 2007)), *report and recommendation adopted*, No. 11-CV-3889, 2013 WL 427178 (S.D.N.Y. Feb. 1, 2013).

Neither party expressly reserved the right not to be bound in the absence of a writing, but the words and conduct of the parties indicate that there was an implied reservation of such a right. First, at the December 19, 2012 conference, counsel for both parties told Judge Reyes that the Settlement Agreement was pending full execution, expressly indicating the parties' intent to have a written, executed document. (*See* Tr. 3:10–11, (Davis stating "this matter is actually pending the signing of the settlement agreement," and Napierela stating "it is my understanding that we were going to execute an agreement with Davis's client this week").) Second, neither side stated the terms of the Settlement Agreement on the record. They simply expressed to

Judge Reyes that they were expecting a signed agreement shortly. Where parties have read the terms of the agreement into the record and expressly agreed to each term or to the agreement as a whole, courts have found those representations to lack express reservation of the right not to be bound in the absence of a formal written document. *See, e.g.*, *Powell*, 497 F.3d at 129–30 (finding no express reservation where counsel for the defendants "stated without objection that 'parties have agreed that the formal settlement documents will incorporate the following terms and conditions,'" and then "recited the terms of the settlement on the record"); *Renaissance Search Partners v. Renaissance Ltd., L.L.C.*, No. 12-CV-05638, 2013 WL 6839039, at *4 (S.D.N.Y. Oct. 15, 2013) (finding no express reservation where the terms of the agreement were read into the record at a settlement conference before the magistrate judge, and the parties affirmed that they understood each term and agreed to be bound by the terms), *report and recommendation adopted in pertinent part*, No. 12-CV-5638, 2013 WL 6840109 (S.D.N.Y. Dec. 13, 2013); *Marino Inst. of Continuing Legal Educ., Inc. v. Issa*, No. 12-CV-4320, 2013 WL 6723614, at *2, 5 (S.D.N.Y. Dec. 20, 2013) (finding no express reservation where parties read the terms of the agreement into the record and stated "[i]t is the intention of the parties that all of the material terms of the agreement as set forth as we go on will be subject to a written long-form agreement," but that the written agreement would be "based on the material terms as agreed to today").

Unlike the parties in *Powell*, *Renaissance Search Partners* and *Issa*, the parties before the Court only stated that the matter was "pending" execution of the Settlement Agreement. In the absence of a recitation of the terms of the Settlement Agreement into the record at the conference before Judge Reyes, or some other formal documentation of the substance of the agreement on the record, and not simply its tentative existence, the Court cannot conclude as the *Powell* court

did, that the Settlement Agreement's reduction to writing was only a formality. *See Powell*, 497

F.3d at 130.  In the absence of a clear manifestation of agreement by the YRB Defendants to all

of the material terms of the Settlement Agreement, the Court must construe Davis's statement

that "the matter is actually pending the signing of a settlement agreement" as a reservation by the

YRB Defendants of their intention not to be bound until the signing of the agreement.[3]  *See*

*Winston*, 777 F.2d at 81 (attorney's request that the court enter a 30-day order of closure "subject

to consummation of the proposed settlement" indicated an express reservation not to be bound).

Similarly, the correspondence between the parties the day before the conference also

indicates a reservation of the right not to be bound absent the signing of the Settlement

Agreement.  On December 18, 2012, Davis's email stated that his client "wants to consult with

another attorney within his Hasidic sect and has asked for a bit more time to come to a

conclusion," and added, "It is my feeling that he will sign."  (Def. Opp'n Ex. A.)  Sutton replied

with an email that stated, in part, "I don't have an issue with you conveying to the Court that the

parties believe settlement is imminent. . . . If you want to send the Court a letter that you believe

that YRB and Sprint are close to settlement and as such you do not want to attend, we won't

oppose."  (*Id.*)  After Davis responded with an email indicating that he thought it best to appear

and report to the Court in person, Sutton responded by stating "[s]ince you will be attending the

conference and we were not able to get this totally settled before the conference, please find

attached the proposed case management plan that we drafted."  (*Id.*)  At an unspecified time

during the day on December 18, 2012, Plaintiffs' counsel states that her office received several

calls from Davis explaining that his client "needed to get approval to sign the agreement from his

---

[3]  Plaintiffs argue that Davis stated at the conference that his client was seeking the blessing of his community leaders prior to signing, but that this was a mere formality, suggesting that the execution of the agreement itself was a mere formality.  (Pl. Mem. 3.)  However, this statement appears nowhere in the unredacted transcript of the conference.

community leaders.  He advised that this was normal and a formality and that he expected to have the signed agreement within a short period of time."  (Sutton May 2013 Decl. ¶ 8.))  Davis, according to Plaintiffs, "asked if we could represent to the Court that Sprint and YRB had settled," to which Sutton agreed.  (*Id*. ¶ 9.)

Based on these facts as agreed upon by both parties, it is clear that, at a minimum, counsel for the YRB Defendants did not intend to be bound until his client had the opportunity to consult with another attorney and/or obtain approval from his community leaders, and that his client, individual Defendant Bodek, had expressly requested "a bit more time to come to a conclusion."  Thus, Davis never unqualifiedly accepted the Settlement Agreement.  These facts collectively demonstrate that the YRB Defendants were reserving the right not to be bound by any agreement until after they had consulted with another attorney and/or received the approval of community leaders.  Even if such a reservation was a "mere formality," as counsel for the YRB Defendants allegedly assured Plaintiffs' counsel, it was a reservation nonetheless.  Indeed, in *Ciaramella*, where counsel for the plaintiffs unequivocally assented to a settlement agreement by stating to counsel for defendants "We have a deal," the court concluded that "nothing in the record suggests that either attorney took this statement to be an explicit waiver of the signature requirement."  *Ciaramella*, 131 F.3d at 325 (citing *R.G. Grp.*, 751 F.2d at 76 and *Davidson Pipe Co. Inc. v. Laventhol & Horwath*, No. 84-CV-5192, 1986 WL 2201, at *5 (S.D.N.Y. Feb. 11, 1986)).

The YRB Defendants also argue, and the Court agrees, that the language of the Settlement Agreement itself indicates that there was no binding agreement until the signing of the document.  (Def. Opp'n 10.)  In *Ciaramella*, the Second Circuit found that language in an unexecuted contract indicating in part that the contract would not become effective until it was

signed by all parties, and which contained a merger clause stating "[n]o other promises or agreements shall be binding unless *in writing and signed* by the parties" weighed in favor of finding that the parties did not intend to be bound in the absence of a signed writing. *Ciaramella*, 131 F.3d at 324–25 (emphasis added).

Here, the preamble clause of the Settlement Agreement[4] states in pertinent part: "This Agreement is made and entered into as of the last date of execution below." (Settlement Agreement at 1.) There is also a substantive provision that provides for a particular condition to become effective "[w]ithin twenty-four (24) months from the date of execution of this Agreement," *id*. at 6, and another substantive provision that becomes effective "within five (5) business days from the full execution of this Agreement," *id*. In addition, the merger clause states in pertinent part:

> This Agreement expresses the entire agreement between the Parties with respect to the compromise of the claims described herein . . . . Each Party to this Agreement has reviewed and understands his or its rights and obligations under this Agreement. Defendants expressly acknowledge that they had the opportunity to review the Agreement and to consult with an attorney and / or interpreter, if needed, and that Defendants are satisfied they understand all the terms and conditions stated therein.

(*Id*. at 10.) In addition, there is a counsel provision stating in pertinent part that "The parties to this agreement understand that this agreement is a legally enforceable contract that affects the parties' rights, duties, and obligations. The parties expressly acknowledged that they have retained or have been encouraged to retain and/or confer with counsel of their choosing for advice before entering into this agreement." (*Id*. at 11.)

---

[4] The Settlement Agreement has been filed under seal by the parties, and while the Court has not unsealed the document, the Court does discuss portions of the document as necessary to render a decision.

The language in the preamble clause which states that the Settlement Agreement is "made and entered into as of the last date of execution," suggests that the parties could not have "entered into" the Settlement Agreement prior to execution. This is especially so considering the presence of substantive conditions discussing rights and obligations that either materialize or disappear at a particular time that is indexed to the date of execution. As the court in *Ciaramella* observed, the presence of such a clause is indicative of an intent not to create a binding settlement agreement until the date of execution. *Ciaramella*, 131 F.3d at 324 (finding that the clause "This Settlement Agreement and General Release shall not become effective ('the Effective Date') until it is signed by [all parties]," combined with defendants' obligation to make the settlement payment within ten days of the date the settlement agreement was executed, indicated intent not to be bound in the absence of execution).

In addition, the "express[] acknowledg[ment]" that the parties have retained and/or conferred with counsel of their choosing, particularly when viewed in conjunction with the fact that counsel for the YRB Defendants' informed Plaintiffs' counsel that his clients wanted to consult with another attorney prior to signing the agreement, (Pl. Opp'n Ex. A at 2), weighs strongly in favor of finding that the contract was not intended to be enforceable absent a signature and formal execution.

Even if, as Plaintiffs argue, the merger clause in the Settlement Agreement does not persuasively demonstrate that the parties had not intended to be bound in the absence of a written document signed by the parties, there is ample additional language in the Settlement Agreement demonstrative of the parties' intent that the full execution of the contract was necessary to show their voluntary and informed consent to the terms of the Settlement Agreement. This is not like the agreement in *Conway*, where the court distinguished *Ciaramella* by noting that "this draft did

not contain *any* language suggesting that the parties did not intend to be bound until the point of signature," notwithstanding a merger clause that merely indicated that the agreement was the entire and complete agreement. *Conway*, 236 F. Supp. 2d at 249 (emphasis added). Having reviewed the language in the Settlement Agreement, correspondence between the parties, and their verbal communications, the Court cannot conclude that there is no reservation of the right not to be bound.

In sum, in light of the absence of a recitation of the terms of the Settlement Agreement on the record at the conference before Judge Reyes, with agreement from both parties, and in view of the emails and statements by counsel for the YRB Defendants that his clients wished to "consult with" another attorney and/or that his clients wished to speak with their community leaders before signing the agreement, and the language of the Settlement Agreement itself, the Court finds that there was at least an implied reservation of the right not to be bound in the absence of a formally executed document. This factor weighs in favor of finding that there was no enforceable Settlement Agreement.

### 2. Partial Performance

The second *Winston* factor does not tip in favor of either Plaintiffs or the YRB Defendants. Plaintiffs contend that there was partial performance of the Settlement Agreement because they refrained from pursuing active litigation against the YRB Defendants. Some courts in this Circuit have found partial performance "in the sense that both sides, relying on the apparent settlement, did not resume active litigation of the case." *Alvarez v. City of New York*, 146 F. Supp. 2d 327, 336 (S.D.N.Y. 2001); *Waite v. Schoenbach*, No. 10-CV-3439, 2011 WL 3425547, at *7 (S.D.N.Y. Aug. 5, 2011) (same), *report and recommendation adopted*, No. 10-CV-3439, 2011 WL 6326115 (S.D.N.Y. Dec. 16, 2011); *Lopez v. City of New York*, 242 F. Supp.

2d 392, 393 (S.D.N.Y. 2003) (same); *Conway*, 236 F. Supp. 2d at 250 (same).  However, those courts have also found that such "partial performance" can be counterbalanced by a lack of any performance of any of the terms of the settlement agreement, such as a payment of a settlement amount.  *See Lopez*, 242 F. Supp. 2d at 394 ("[C]ourts within this circuit have found that this fact does not weigh for or against settlement."); *Walker*, 2006 WL 1662702, at *8 (finding that "this factor does not appear to hinder nor help plaintiff's claim that the oral settlement is not binding," where there was no evidence of partial performance and neither party pursued litigation for two months); *Conway*, 236 F. Supp. 2d at 250 ("this factor does not tip the balance in either direction").  None of the terms of the Settlement Agreement have been performed.[5]  The Court agrees with the conclusions in *Conway* and *Alvarez* that, absent evidence of partial performance of any of the terms of the Settlement Agreement, the mere fact that the parties have refrained from further litigation does not weigh for or against Plaintiffs' claim that the Settlement Agreement is binding.

### 3.    Agreement as to all Material Terms

The third *Winston* factor weighs in favor of finding that there was no binding agreement, because the parties disagreed about at least one material term of the Settlement Agreement.  "To

---

[5]  Plaintiffs argue that revising the Settlement Agreement to "reflect the agreed upon terms" indicated partial performance.  (Pl. Reply 5 (citing *Powell*, 497 F.3d 124).)  In *Powell*, the defendant, pursuant to the terms of a contested settlement agreement with the plaintiff, drafted a letter of reference for the plaintiff, with the only remaining detail being whether it would say that the plaintiff's performance on the job was 'fully satisfactory' or 'exemplary.'"  *Powell*, 497 F.3d at 130.  The Second Circuit found that such a partial performance of one of the terms of the agreement weighed in favor of finding that the parties intended to be bound by the agreement.  The defendant's action in *Powell* is not analogous to revising the Settlement Agreement here where such revision, unlike in *Powell*, did not carry out any of the terms of the agreement.  Instead, Plaintiff's concession that the Settlement Agreement was still in the process of being "drafted and revised to reflect the agreed upon terms," (Pl. Reply 5), suggests that it was still not final.

create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 95 (2d Cir. 2007) (quoting *Express Indus. & Terminal Corp. v. New York State Dep't of Transp.*, 93 N.Y.2d 584, 589 (1999)). Because "[t]he actual drafting of a written instrument will frequently reveal points of disagreement, ambiguity, or omission which must be worked out prior to execution," *Winston*, 777 F.2d at 82 (quoting *R.G. Grp.*, 751 F.2d at 75), "even 'minor' or 'technical' changes arising from negotiations over the written language of an agreement can weigh against a conclusion that the parties intended to be bound absent a formal writing.'" *Powell*, 497 F.3d at 130 (citing *Winston,* 777 F.2d at 82–83). "Such changes are relevant, however, only if they show that there were points remaining to be negotiated such that the parties would not wish to be bound until they synthesized a writing 'satisfactory to both sides in every respect.'" *Powell*, 497 F.3d at 130 (citing *Winston*, 777 F.2d at 82–83.)

Here, the Court does not have the benefit of an on-the-record agreement from both parties to all of the material terms of the settlement, as the parties did not fully discuss the terms at the conference with Judge Reyes on December 19, 2012. *See, e.g.*, *Powell*, 497 F.3d at 130 ("the parties agreed to all of the material terms of the settlement agreement at the June 23, 2004 hearing"); *Carson Optical, Inc. v. Hawk Importers, Inc.*, No. 12-CV-1169, 2013 WL 5740452, at *6 (E.D.N.Y. Oct. 10, 2013) ("the transcript reveals that the parties entered a detailed agreement, far beyond mere broad outlines of a settlement"); *Wesley v. Corr. Officer Badge No. 9417*, No. 05-CV-5912, 2008 WL 41129, at *3 (S.D.N.Y. Jan. 2, 2008) ("During the September 20th settlement conference with the Court, both parties voluntarily consented to settle the case for the agreed upon amount and the Court made it clear that the case was concluded."); *Conway*,

236 F. Supp. 2d at 251 (finding agreement on all material terms where "the parties explicitly agreed to three of the four terms at a settlement conference" and both parties later agreed, through *ex parte* negotiations through the Court, on the fourth term).  As for the terms of the written Settlement Agreement, in the absence of an executed writing, the Court cannot determine from the document whether both parties had agreed to each of the material terms.  A declaration by Defendant Bodek indicates that, when he met with Davis on December 18 2012, he was not in agreement with one of the material terms of the Settlement Agreement as he had "a major problem, on practical, business, moral and ethical grounds," with the term.  (Decl. of Yehudah Bodek, annexed to Def. Opp'n, ¶ 12).

This disagreement by the individual Defendant was raised the following day at the conference before Judge Reyes.  After a lengthy discussion between counsel for the Jasco Defendants, Judge Reyes, and counsel for Plaintiffs, Davis informed the court that "one of the sticking points" about the Settlement Agreement between Plaintiffs and the YRB Defendants was in regard to one of the major material terms of the Settlement Agreement.[6]  (Tr. 16:17–18.) Judge Reyes asked counsel "Do you want to talk about it now or no?"  Counsel for Plaintiffs objected that "it was my understanding that we were going to execute an agreement with Davis's client this week," and suggested that her colleague "call Davis and discuss that mater with him over the phone."  (*Id*. at 17:16–19.)  After some discussion of the substance of this contract term, Judge Reyes said "All right . . . . Continue to talk about it, and if you can't reach resolution, then we'll have our settlement conference."  (*Id*. at 18:12–14.)  This discussion convincingly demonstrates that the parties had *not* reached agreement on all of the material terms of the Settlement Agreement.

---

[6]  The content of this "sticking point" is redacted at the request of Plaintiffs.

Plaintiffs' argument that this exchange does not negate the fact that Sprint and the YRB Defendants had previously reached an express agreement to all of the terms of the Settlement Agreement flies in the face of reality. The Second Circuit cautioned in *Winston* that even "minor or technical," changes made to a written document subsequent to the parties' oral agreement weighed against a finding that the oral agreement was binding. *Winston*, 777 F.2d at 82 ("the fact[] that such changes were minor and that oral agreement was actually reached on all of the remaining terms does not necessarily lead to the conclusion that the parties were bound prior to these modifications"). The Second Circuit limited this cautionary note later in *Powell* by stating that such changes made subsequent to oral agreement indicated a desire not to be bound "only if they show that there were points remaining to be negotiated such that the parties would not wish to be bound until they synthesized a writing satisfactory to both sides in every respect." *Powell*, 497 F.3d at 130 (internal quotation marks omitted).

Having reviewed the unredacted transcript of the conference, the Court is convinced that the YRB Defendants were not in agreement with this term as it was drafted, and that it is a material term of the Settlement Agreement. Judge Reyes's exhortation to continue discussing the issue and his instruction that he and the parties would discuss it at a settlement conference if they could not reach resolution, and counsel for Plaintiffs' consent to Judge Reyes's suggestion, all weigh in favor of finding that the parties had not reached full resolution, or agreement on, that "sticking point." *Cf. Foster v. City of New York*, No. 96-CV-9271, 2000 WL 145927, at *1 (S.D.N.Y. Feb. 7, 2000) (enforcing in-court oral settlement agreement where "plaintiff initially agreed to the offer, and counsel thereafter communicated his client's consent to defendant's counsel," and then both parties informed the court that they had settled).

Plaintiffs argue that the email exchange of December 18, 2012, in which the attorney for the YRB Defendants represented that he was attempting to get his clients to sign the Settlement Agreement "without referencing any issues or edits or reservation of rights" illustrates that the YRB Defendants' attorney was expressing agreement on all of the material terms. (Pl. Reply 7.) This argument is misplaced. The burden of establishing agreement as to all of the material terms of a contract is on a party seeking to enforce that contract. *See Dreyfuss v. Etelecare Global Solutions-U.S. Inc.*, 349 F. App'x 551, 555 (2d Cir. 2009) ("a party seeking to enforce a contract must prove not only the existence of the contract, but also its terms" (applying New York law)); *Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc.*, 447 F. Supp. 2d 329, 337 (S.D.N.Y. 2006) ("The question for the Court is whether [party seeking to enforce a settlement agreement] has satisfied its burden of demonstrating that the parties had a 'meeting of the minds' as to all material terms of a settlement agreement."). Plaintiffs cannot establish that the YRB Defendants agreed to all of the material terms of the Settlement Agreement by showing that, at the time counsel for the YRB Defendants indicated that he was still "attempting to get his clients to sign off on the agreements," (Pl. Reply 7), counsel failed to specify which issues concerned his clients and had thus far prevented them from signing. Indeed, the fact that Davis expressly indicated that he was *trying* to get his clients to sign the Settlement Agreement indicates an absence of a "meeting of the minds."

In sum, in the absence of an on-the-record agreement, the Court cannot find that, under the circumstances, there was agreement on all the material terms in the Settlement Agreement and this factor weighs in favor of a conclusion that the Settlement Agreement is not binding.

### 4. Type of Agreement Usually Reduced to a Writing

The fourth *Winston* factor, whether the Settlement Agreement at issue is the type of agreement that is usually committed to writing, weighs in favor of the YRB Defendants. "Settlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court." *Ciaramella*, 131 F.3d 320, 326 (2d Cir. 1997) (citing N.Y. C.P.L.R. § 2104 and Cal. Civ. Proc. Code § 664.6)). In *Powell*, the Second Circuit recognized an exception to the usual rule that settlement agreements be in writing and fully executed, because the terms of the agreement had been "announced on the record and assented to by the plaintiff in open court." *Powell*, 497 F.3d at 131; *see also id.* ("The in-court announcement here functioned in a manner akin to that of a memorializing writing." (quoting *Willgerodt on Behalf of Majority Peoples' Fund for the 21st Century, Inc. v. Hohri*, 953 F. Supp. 557, 560 (S.D.N.Y. 1997))).

The Court finds N.Y. C.P.L.R. § 2104 instructive in illustrating that the Settlement Agreement is of the type usually committed to writing. N.Y.C.P.L.R § 2104 provides that "[a]n agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in a writing subscribed by him or his attorney or reduced to the form of an order and entered." N.Y. C.P.L.R. § 2104; *see Clark v. Gotham Lasik, PLLC*, No. 11-CV-1307, 2012 WL 987476, at *5 (S.D.N.Y. Mar. 2, 2012) ("even if CPLR [§] 2104 is not controlling, it is relevant to the fourth *Winston* factor: it illustrates that the settlement agreement here is of the type usually committed to writing" (citing *Langreich v. Gruenbaum*, 775 F. Supp. 2d 630, 635 (S.D.N.Y. 2011))), *report and recommendation adopted*, No. 11-CV-1307, 2012 WL 987586 (S.D.N.Y. Mar. 23, 2012); *see also Lyman*, 2012 WL 6135354, at *4 n.5 ("To the extent that [N.Y. C.P.L.R § 2104] indicates a preference for written, signed settlement agreements, it figures into the analysis of the

parties' intent to be bound in the absence of a writing."); *Willgerodt*, 953 F. Supp. at 560 ("Under New York law, an oral settlement agreement is only binding if it is made in 'open court.'"). The open court pronouncement requirement "serves as a limited exception to the Statute of Frauds."[7] *Powell*, 497 F.3d at 129 (citing *Jacobs v. Jacobs,* 645 N.Y.S.2d 342, 344–45 (1996)).

As discussed above, the terms of the Settlement Agreement were not read into the record nor agreed to at the conference. In addition, the Settlement Agreement, which is eleven pages long and contains weighty legal obligations that last into perpetuity, includes signature pages requiring notarization for each signatory. Under these circumstances, the Court is not satisfied that any of the formalities that are normally attendant upon the incurring of such significant legal duties were present here. *See Ciaramella*, 131 F.3d at 326 (finding that a settlement agreement that had not been made on the record in open court had to be reduced to a writing and formally executed); *Winston*, 777 F.2d at 83 (finding that a settlement agreement for payment of $62,500 payable over several years, although only four pages long, was required to be in writing).

---

[7] Under the statute of frauds, contracts that cannot be performed in less than one year or before the end of a lifetime must be "in writing and subscribed by the party to be charged therewith." N.Y. Gen. Oblig. Law § 5-701(a) ("Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking [b]y its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime"); *Darby Trading Inc. v. Shell Int'l Trading & Shipping Co. Ltd.*, 568 F. Supp. 2d 329, 338 (S.D.N.Y. 2008) ("The Statute of Frauds forbids the imposition of a performance obligation on a defendant necessarily extending beyond one year, in the absence of a writing(s) which sets forth all of the essential terms of the agreement imposing that performance obligation." (quoting *Ohanian v. Avis Rent A Car Sys., Inc.*, 779 F.2d 101, 106 (2d Cir. 1985)); *Sheehy v. Clifford Chance Rogers & Wells LLP*, 3 N.Y.3d 554, 559–60 (2004) ("The statute of frauds, as incorporated in section 5–701(a)(1) of the General Obligations Law, provides that an agreement is void if it is not in writing and 'subscribed by the party to be charged therewith' when the agreement '[b]y its terms is not to be performed within one year from the making thereof.'" (quoting N.Y. Gen. Oblig. Law § 5-701(a))).

Absent any recitation of the terms of the Settlement Agreement on the record that were agreed to by the parties (and not merely referred to as "pending" by their counsel), this is not the rare case where the Court can find an exception to the requirement that a settlement agreement be in the form of a fully executed written document.

### iii. The YRB Defendants' "Counteroffer"

Plaintiffs argue for the first time in their reply papers on the parties' supplemental briefing that there was a binding Settlement Agreement when Plaintiffs accepted the YRB Defendants' counteroffer, which counteroffer took the form of counsel for the YRB Defendants "demand[ing]" revisions to Sprint's proposed Settlement Agreement.[8] (Pl. Suppl. Reply 1–2 (citing, *inter alia*, *Int'l Paper Co. v. Suwyn*, 966 F. Supp. 246, 254 (S.D.N.Y. 1997)).) Plaintiffs argue that when a counteroffer is made by one party, that party is subject to a binding agreement once the other party accepts the counteroffer. This argument oversimplifies the process of settlement negotiations, which inherently require back-and-forth discussions and incorporation of revisions and suggestions. *See Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 101 (2d Cir. 2007) ("Labeling the various drafts 'offers' and 'counteroffers' is pointless. The parties were in *negotiations* . . . ."). By Plaintiffs' logic, it would be difficult to discern at what point in the process a requested revision becomes a binding counteroffer if the simple fact of requesting revisions to a draft agreement during negotiations can become a binding counteroffer. *Cf. Ciaramella*, 131 F.3d at 323 ("Enforcing premature oral settlements against the expressed intent of one of the parties will not further a policy of encouraging settlements. People may hesitate to enter into negotiations if they cannot control whether and when tentative proposals become binding.").

---

[8] Plaintiffs do not append the emails that purportedly comprise the counteroffer and acceptance of the revised Settlement Agreement.

This is not to say that settlement negotiations can never give rise to counteroffers. Courts have found that responses to settlement offers were binding counteroffers where the counteroffers, as a general matter, expressly indicate the willingness of the parties to be bound at the countered terms. *See, e.g.*, *Ellefson v. Megadeth, Inc.*, No. 04-CV-5395, 2005 WL 82022, at *5 (S.D.N.Y. Jan. 13, 2005) (finding that "[b]y faxing a signed signature page to an undisputed, execution version of [a settlement] Agreement, plaintiff signaled his willingness to be bound by its terms," and therefore had sent a counteroffer"); *Etablissement Asamar Ltd. v. Lone Eagle Shipping Ltd.*, 882 F. Supp. 1409, 1410 (S.D.N.Y. 1995) (finding that facsimile sent in response to a settlement offer stating "We are willing to accept a flat amount of USD 40,000.00. If owners agree, please remit funds," was a binding counteroffer). However, the process of negotiating the Settlement Agreement here cannot be reduced to a single "offer and acceptance" transaction. *See Teachers Ins. & Annuity Ass'n of Am. v. Tribune Co.*, 670 F. Supp. 491, 497 (S.D.N.Y. 1987) ("It is fundamental to contract law that mere participation in negotiations and discussions does not create binding obligation, even if agreement is reached on all disputed terms.")

In any event, even if sending the revisions by counsel for the YRB Defendants was a counteroffer and Plaintiffs' acceptance of the revisions was an acceptance of the counteroffer, this argument alone does not address whether a binding contract was formed. *See Suwyn*, 966 F. Supp. at 256 (finding that even though counteroffer had been made and accepted between parties to a noncompete contract, that nonetheless "there was no enforceable agreement between Suwyn and International Paper" in light of the "different and reasonable understandings of the key language in the Agreement"). Under either New York or federal law, an unexecuted contract is not enforceable unless the Court finds that the parties intended to bind themselves in the absence

of a formally executed agreement. "Because of this freedom to determine the exact point at which an agreement becomes binding, a party can negotiate candidly, secure in the knowledge that he will not be bound until execution of what both parties consider to be [the] final document." *Winston*, 777 F.2d at 80. As discussed above, applying the *Winston* factors to address this question, the Court is not convinced that the parties to the Settlement Agreement intended to be bound in the absence of an executed agreement. *See Hostcentric Technologies, Inc. v. Republic Thunderbolt, LLC*, No. 04-CV-1621, 2005 WL 1377853, at *6 (S.D.N.Y. June 9, 2005) (applying *Winston* factors to determine "whether the parties intended to be bound in the absence of a fully executed formal written agreement," where parties exchanged emails containing a formal counter-offer and an acceptance).

In sum, the parties here did not enter into a "voluntary, clear, explicit, and unqualified" Settlement Agreement "in court and on the record." *Powell*, 497 F.3d at 129. Nor do the verbal and email correspondence suggest that they reached an oral agreement. However, even if the parties reached an oral agreement at the conference or prior to the conference based on verbal representations or exchange of emails with revisions to the Settlement Agreement, application of the *Winston* factors requires the conclusion that the parties did not intend to bind themselves to the Settlement Agreement in the absence of a fully executed document. Based on the facts presented to the Court by the parties, the Court finds that no enforceable Settlement Agreement was reached between the parties. Plaintiffs' motion to enforce the Settlement Agreement is denied.[9]

_____

[9] Plaintiffs' request for an evidentiary hearing is denied as moot. Plaintiffs argue that they are entitled to an evidentiary hearing under *Reich v. Best Built Homes, Inc.*, 895 F. Supp. 47, 49 (W.D.N.Y. 1995), to determine whether counsel for the YRB Defendants manifested assent on his clients' behalf to the Settlement Agreement. (Pl. Suppl. Reply 4–5.) Plaintiffs are correct that the question of whether the parties intended to bind themselves to an oral agreement in the

### III.  The YRB Defendants' Motion to Compel Arbitration

The YRB Defendants move pursuant to 9 U.S.C. § 3 to stay this action pending

arbitration.  (Def. Mem. 1.)   Under the Federal Arbitration Act, when a dispute brought before a

federal court is subject to an arbitration agreement, a court "shall . . . stay the trial of the action

until such arbitration has been had in accordance with the terms of the agreement, providing the

applicant for the stay is not in default in proceeding with such arbitration."  9 U.S.C. § 3;

*WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997) ("Under Section 3 of the FAA,

---

absence of a writing is indeed a "question of fact, to be determined by examination of the totality of the circumstances." *Ciaramella*, 131 F.3d at 322.  However, an evidentiary hearing is not necessary where there are no issues of disputed fact. *See Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998) ("An evidentiary hearing is not required when the relevant facts either are not in dispute or have been clearly demonstrated at prior stages of the case" (motion for preliminary injunction)).  According to the evidence in the record, including the undisputed email correspondence between counsel on December 18, 2012, the transcript of the conference before Judge Reyes, as well as the initial declaration submitted by counsel for Plaintiffs, counsel for the YRB Defendants' representations were always accompanied by qualifications, though Plaintiffs argue that the qualifications were minor or "mere formalities."  As discussed in part II.c.ii, if Plaintiff could establish at an evidentiary hearing that Davis unequivocally bound his clients to all of the material terms of the agreement on December 18, 2012, the Court would still apply the *Winston* factors to assess, as it did above, all the remaining factual evidence in the record to determine the enforceability of any oral agreement.

The Court notes that, to the extent there is any dispute as to whether Davis made an unqualified verbal acceptance of the Settlement Agreement on December 18, 2012, it is created solely by the *second* Declaration of Stacey Sutton, submitted by Plaintiffs with a supplemental brief on August 2, 2013, which includes the statement "Davis told me that we had reached settlement."  (Sutton August 1, 2013 Decl. ¶ 4.)  Plaintiffs did not assert that Davis made an unqualified acceptance of the Settlement Agreement prior to the submission of this declaration, and this assertion does not appear in the first Declaration of Sutton, dated May 3, 2013. Plaintiffs cannot create a genuine issue of disputed fact by submitting an additional declaration that includes information conspicuously omitted from prior submissions and the other evidence in the record.  As discussed in detail *supra*, regardless of what information was communicated between counsel for the parties on December 18, 2012, there is no dispute that on December 19, 2012 at the conference before Judge Reyes, Davis specifically stated there was a "sticking point" to his clients' signing the agreement, which "sticking point" was discussed at the conference, the parties were told by Judge Reyes to continue trying to resolve it and if they could not, that the judge would hold a settlement conference to resolve the issue, demonstrating ongoing settlement negotiations.

9 U.S.C. § 3, a district court 'must stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding.'" (quoting *McMahan Securities Co. L.P. v. Forum Capital Mkts. L.P.*, 35 F.3d 82, 85 (2d Cir.1994)).

In deciding whether claims are subject to arbitration, courts must consider "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d at 128; *see also Adams v. Suozzi*, 433 F.3d 220, 226 (2d Cir. 2005) ("The District Court possesse[s] not only authority, but a duty, to determine whether there ever existed an agreement to arbitrate between the parties." (citing *AT&T Technologies, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986))); *Gwathmey Siegel Kaufman & Assocs. Architects, LLC v. Rales*, 898 F. Supp. 2d 610, 616 (S.D.N.Y. 2012) (using the two part test), *aff'd*, 518 F. App'x 20, 21 (2d Cir. 2013); *Severstal U.S. Holdings, LLC v. RG Steel, LLC*, 865 F. Supp. 2d 430, 438–39 (S.D.N.Y. 2012) (same). "The party seeking to stay the case in favor of arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made." *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (citing *Almacenes Fernandez, S.A. v. Golodetz*, 148 F.2d 625, 628 (2d Cir. 1945)).

The YRB Defendants argue that, as stated by Plaintiffs in the Complaint, the conduct underlying Plaintiffs' causes of actions are subject to the Terms and Conditions set forth in a contract that allegedly exists between Plaintiffs and the YRB Defendants, and these Terms and Conditions include an express arbitration clause. (Def. Opp'n 2–4 (citing Compl. ¶¶ 34, 60, 61 and Compl. Ex. B at 10).) The YRB Defendants have previously denied knowledge of whether they are bound by the "Terms and Conditions," as alleged by Plaintiffs. (Def. Opp'n 3 (citing Answer ¶¶ 34, 60, 61).) However, the YRB Defendants argue that Plaintiffs are estopped from

denying the existence of the arbitration clause because Plaintiffs have alleged that the YRB Defendants violated the Terms and Conditions." (*Id*.) Plaintiffs oppose the YRB Defendants' motion solely on the basis that the motion is moot, as there is a binding Settlement Agreement. The YRB Defendants note Plaintiffs' lack of substantive opposition to the merits of their motion, and urge the Court to enter a stay if the Court finds the Settlement Agreement is not enforceable. (Def. Reply Decl. ¶ 2.)

In light of the Court's finding that there is no binding Settlement Agreement, and of the YRB Defendant's denial of knowledge as to whether they are bound by the Terms and Conditions containing the arbitration agreement, and in the absence of full briefing on the merits as to whether the claims in this case are subject to arbitration, the Court denies the YRB Defendants' motion to stay the action pending arbitration, without prejudice to renew.

## IV. Conclusion

For the foregoing reasons, the Court denies Plaintiffs' motion to enforce the Settlement Agreement and denies, without prejudice to renew, the YRB Defendants' motion to stay the action pending arbitration.

SO ORDERED:

_____s/MKB_____
MARGO K. BRODIE
United States District Judge

Dated: March 25, 2014
        Brooklyn, New York